IN RE:                                          Chapter 11
                                                Hon. Walter Shapero
TOWN CENTER FLATS, LLC                          Case No. 15-41307

　　　　　Debtor.

_____/

## MOTION FOR AN ORDER CONFIRMING THAT NO STAY IS IN EFFECT OR IN THE ALTERNATIVE TO PROHIBIT USE OF RENTS AND CASH COLLATERAL

ECP Commercial II LLC ("ECP"), by and through its undersigned counsel, and pursuant to sections 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), moves this Court for an order confirming that the Rents (as described herein) are not subject to the automatic stay under section 362 of the Bankruptcy Code or, in the alternative, prohibiting Town Center Flats, LLC (the "Debtor") from collecting, utilizing or disbursing Rents and all cash collateral of ECP, as defined below, without permission of ECP or further order of the Court.

## BACKGROUND

### A. The Commencement of the Chapter 11 Case

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 362 and 363 of the Bankruptcy Code. This is a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure and is a core proceeding.

2. The Debtor initiated this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 31, 2015 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of Michigan.

**B. The Loan Transaction**

3.      On June 1, 2006, the Debtor and KeyBank, National Association ("<u>KeyBank</u>") entered into a Construction Loan Agreement (the "<u>Original Loan Agreement</u>") and related agreements and documents that established a $5,300,000.00 commercial loan (the "<u>Original Loan</u>") to Debtor and otherwise reflected certain loan arrangements between the parties.  A copy of the Original Loan Agreement is attached hereto as **Exhibit 6A** and incorporated herein by reference.

4.      Debtor and KeyBank entered into a $5,300,000.00 Mortgage Note (the "<u>Original Note</u>") on June 1, 2006 that evidenced the Original Loan.  The Original Note included Debtor's promise to make certain payments to KeyBank and to perform various other obligations.  A copy of the Original Note is attached hereto as **Exhibit 6B** and incorporated herein by reference.

5.      To secure the payment and performance of its obligations under the Original Loan Agreement and the Original Note, the Debtor executed a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated June 1, 2006 in favor of KeyBank (the "<u>Original Mortgage</u>"), which was recorded in the official records of Macomb County, Michigan on June 12, 2006 at Liber 17914 Page 586.  The property and premises conveyed by the Original Mortgage as security for the Original Loan Agreement and the Original Note, and more fully described in Exhibit A to the Original Mortgage, include certain buildings, improvements, appurtenances, fixtures and personal property located thereon, and all rents, income, proceeds and profits accruing and to accrue therefrom, consisting of a residential townhome and apartment complex in Shelby Township, Macomb County, Michigan, known as Town Center Flats (collectively, the  "<u>Original Mortgaged Property</u>").  A copy of the Original Mortgage is attached hereto as **Exhibit 6C** and incorporated herein by reference.

6.     To provide additional security for the payment and performance of its obligations under the Original Loan Agreement and the Original Note, Debtor executed an Assignment of Leases and Rents (the "Assignment of Rents") in favor of KeyBank dated June 1, 2006, which was recorded in the official records of Macomb County, Michigan on June 12, 2006 at Liber 17914 Page 609.   Among other things, the Assignment of Rents provides for Debtor's assignment and transfer to KeyBank of all the rents, income, and profits then or to become due from the real property and improvements described in the Assignment of Rents (the "Rents").  A copy of the Assignment of Rents is attached hereto as **Exhibit 6D** and incorporated herein by reference.

7.     KeyBank perfected its security interest in the certain personal property, as described in the Mortgage, by filing a financing statement with the Michigan Secretary of State.

**C.  Amendments to the Loan Documents**

8.     Debtor requested and KeyBank agreed to make certain modifications to their agreements, including:

- First Amendment to Construction Loan Agreement effective June 1, 2008 (the "First Amendment to Loan Agreement").  A copy of the First Amendment to Loan Agreement is attached hereto as **Exhibit 6E** and incorporated herein by reference.

- $5,300,000.00 Amended and Restated Promissory Note (the "First Amended Note") effective June 1, 2008.  A copy of the First Amended Note is attached hereto as **Exhibit 6F** and incorporated herein by reference.

- Second Amendment to Construction Loan Agreement effective June 1, 2008 (the "Second Amendment to Loan Agreement").  A copy of the Second Amendment to Loan Agreement is attached hereto as **Exhibit 6G** and incorporated herein by reference.

- $5,100,000.00 Amended and Restated Promissory Note (the "Second Amended Note") effective December 1, 2008.  A copy of the Second Amended Note is attached hereto as **Exhibit 6H** and incorporated herein by reference.

- Amendment to Mortgage, effective December 1, 2008 (the "First Amendment to Mortgage"), which modified the Mortgage to include additional real property as described in the First Amendment to Mortgage (together with the Original Mortgaged

Property, the "<u>Mortgaged Property</u>"). A copy of the First Amendment to Mortgage is attached hereto as **Exhibit 6I** and incorporated herein by reference.

- Third Amendment to Construction Loan Agreement, effective December 31, 2010 (the "<u>Third Amendment to Loan Agreement</u>"). Among other things, the Third Amendment to Loan Agreement extended the maturity date of the Loan to June December 31, 2013 (the "<u>Third Extended Loan</u>"). A copy of the Third Amendment to Loan Agreement is attached hereto as **Exhibit 6J** and incorporated herein by reference.

- $3,100,000 Bifurcated Promissory Note A ("<u>Note A</u>") and a $2,000,000.00 Bifurcated Promissory Note B ("<u>Note B</u>" and together with Note A, the "<u>Bifurcated Notes</u>"), effective December 31, 2010 that evidenced the Third Extended Loan. By their terms, the maturity date of the Bifurcated Notes was December 31, 2013. Copies of the Bifurcated Notes are attached hereto as **Exhibit 6K** and incorporated herein by reference.

- Second Amendment to Mortgage in favor of KeyBank (the "<u>Second Mortgage Amendment</u>") effective December 31, 2010. A copy of the Second Mortgage Amendment is attached hereto as **Exhibit 6L** and incorporated herein by reference.

9. By a Purchase and Sale Agreement and related documents dated September 30, 2013, KeyBank assigned to ECP all of KeyBank's right, title and interest in and to the Loan Documents[1] and all amounts due thereunder.

10. ECP owns and holds the Bifurcated Notes, the Mortgage, the Assignment and all other Loan Documents.

### D. Defaults and Acceleration

11. The Note matured on December 31, 2013 (the "<u>Maturity Date</u>"). Debtor defaulted on its Obligations to ECP under the Note and the Loan Agreement by, among other things, failing to pay ECP all amounts due under the Loan Documents on the Maturity Date.

---

[1] Collectively, the Original Loan Agreement, the First Amendment to Loan Agreement, the Second Amendment to Loan Agreement and the Third Amendment to Loan Agreement are referred to as the "Loan Agreement." Collectively, the Original Note, the First Amended Note, the Second Amended Note and the Bifurcated Notes are referred to as the "Note." Collectively, the Original Mortgage, the First Mortgage Amendment and the Second Mortgage Amendment are referred to as the "Mortgage." Collectively, the Loan Agreement, the Note, the Mortgage, the Assignment of Rents, the Guaranties, and all other related documents, instruments and agreements evidencing Debtor's obligations and indebtedness to KeyBank are referred to as the "Loan Documents." Debtor's monetary and other obligations under the Loan Documents are collectively referred to as the "Obligations."

12. Debtor's default under the Note and the Loan Agreement constitutes an event of default under the Mortgage, and represents Debtor's breach of the Mortgage. Debtor's default under the Note and the Loan Agreement constitutes an event of default under the Assignment of Rents, and represents Debtor's breach of the Assignment of Rents. ECP notified the Debtor the of default and made demand upon Debtor for payment.

13. On December 22, 2014, ECP exercised its rights under the Loan Documents and MCL § 554.231 to collect rents directly from tenants of the Mortgaged Property (the "Tenants") by sending a Notice of Default in the Terms and Conditions of the Mortgage and Assignment of Leases and Rents (the "Notice") and payment instructions to all known Tenants. On December 23, 2014, the Notice was recorded in the official records of Macomb County, Michigan at Liber 23168 Page 689. A copy of the Notice is attached hereto as **Exhibit 6M** and incorporated herein by reference.

14. To date, Debtor remains in default of its Obligations to ECP under the Note and the Loan Agreement, and has failed and refused to make payment of its outstanding obligations to ECP. Additionally, Debtor has breached the Assignment of Rents by failing to remit any rents from the Mortgaged Property to ECP.

15. As of the Petition Date, Debtor's obligations to ECP totaled $5,329,329.37, plus attorneys' fees and costs.

16. Debtor's sole source of funds is Rents. Under the Mortgage and the Assignment of Rents and applicable law, as discussed *infra*, Rents generated by the Property are owned by ECP and are not property of Debtor's estate.

17. On January 23, 2015, ECP filed a Complaint (the "State Court Complaint") in the Circuit Court for the County of Macomb, Michigan (the "State Court") (Case No. 15-237-CH)

asserting, among other things, causes of action against Debtor for breach of contract, foreclosure on the Mortgage and the appointment of a receiver to take possession of and operate Debtor's assets, including the Cash Collateral (the "State Court Proceedings").

18. Also on January 23, 2015, ECP filed a Motion for Appointment of a Receiver and Related Injunctive Relief in the State Court Action (the "Receivership Motion").

19. The State Court was scheduled to hold a hearing on the Receivership Motion at 8:00 a.m. on February 2, 2015. Due to the filing of this case and the automatic stay, that hearing was not held.

20. To date, Debtor has not remitted any Rents to ECP and, upon information and belief, continues to collect, possess, use and otherwise dissipate the Rents despite ECP's instructions otherwise.

21. ECP notified Debtor's counsel on January 29, 2015 and on February 9, 2015 that ECP explicitly does not consent to Debtor's use of the Rents for any purpose, including the retention of counsel. Copies of these emailed communications are attached hereto as **Exhibit 6N.**

### Relief Requested

22. The Rents are not property of the Debtor's estate and, accordingly, are not subject to the automatic stay under section 362 of the Bankruptcy Code. Under section 362(j) of the Bankruptcy Code, ECP is entitled to an order confirming the same.

23. By the Assignment of Rents, the Debtor agreed to "irrevocably, absolutely and unconditionally transfer, sell, assign, pledge and convey" the Rents to its secured creditor, now ECP. *Assignment of Rents*, p. 2. Under the terms of the Assignment of Rents, Debtor retained only a license "to retain possession of the Leases and to collect and retain the Rents unless and

until there shall be an 'Event of Default' (as defined herein) under the terms of this Assignment or any of the other Loan Documents." *Id*.

24. The pre-petition property rights with respect to the Rents are governed by Michigan non-bankruptcy law, which provides that EPC acquired title to the Rents prior to the Petition Date.

25. MCL § 554.231 provides, in pertinent part, that:

> it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage[.]

26. As described *supra*, the Debtor was in default under the Mortgage and the Assignment of Rents prior to the Petition Date and thus the assignments of the Rents contained therein became binding upon Debtor prior to the Petition Date under MCL § 554.231. The Rents were assigned pre-petition and ceased to be the Debtor's property pre-petition.

27. Further, under Michigan law, as recently applied by this Court, such an assignment operates, upon the occurrence of an event of default and enforcement of the Assignment of Rents, to transfer ownership of rents to the secured creditor, with the debtor retaining only an equitable right of redemption upon payment of the debt in full or foreclosure upon the Mortgage. *See In re Madison Heights Grp., LLC,* 506 B.R. 728, 732 (Bankr. E.D. Mich. 2013) *adhered to on denial of reconsideration*, 506 B.R. 734 (Bankr. E.D. Mich. 2014) ("For these reasons, the Court concludes that there is no cash collateral that the Debtor can use in this case. The rental income from the Debtor's tenants, and the right to receive that income, belongs entirely to [the secured creditor], unless and until the Debtor fully pays its debt to [the secured creditor], or redeems the [the secured creditor's] mortgage after a foreclosure sale.").

28. This is because "Michigan law transfers ownership of the Rents to the mortgagee until the Mortgage is satisfied... all rents collected by the mortgagee from the time of default to the time of redemption belongs to the mortgagee until the Debtor redeems the Property." *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 360 (Bankr. S.D.N.Y. 1995) (applying Michigan law).

29. The *Madison Heights* view is supported by recent scholarly research into the issue, including Paul Rubin, *Absolute Assignments of Rents Survive Filings*, Am. Bankr. Inst. J., February 2011, 50, and is in accord with a number of recent cases from other jurisdictions. *See, e.g.*, *Sovereign Bank v. Schwab*, 414 F.3d 450, 453 (3d Cir. 2005); *In re Builders Grp. & Dev. Corp.*, 502 B.R. 95, 117 (Bankr. D.P.R. 2013); In re Kingsport Ventures, L.P., 251 B.R. 841, 848 (Bankr. E.D. Tenn. 2000).

30. As discussed *supra*, ECP properly enforced the Assignment of Rents, pursuant to MCL § 554.231, by recording the Notice and sending the Notice to Debtor and tenants of the Mortgaged Property, informing them of the same. ECP's actions, in accordance with the terms of the Mortgage and the Assignment of Rents and Michigan law, served to transfer, pre-petition, title to the Rents from Debtor to ECP. *See In re Madison Heights Grp., LLC,* 506 B.R. at 730. As a consequence, the Rents were not the Debtor's property on the Petition Date and, thus, are not included in the Debtor's bankruptcy estate.

31. Further, as evidenced by **Exhibit 6N,** ECP notified Debtor's counsel on January 29, 2015 and on February 9, 2015 that ECP explicitly does not consent to Debtor's use of the Rents for any purpose, including the retention of counsel.

32. ECP is aware that this Court, in *Matter of Newberry Square, Inc.*, 175 B.R. 910 (Bankr. E.D. Mich. 1994), found that assigned rents could be considered property of a debtor's

chapter 11 estate. While ECP respectfully suggests that the more recently decided *In re Madison Heights Grp.*, LLC, 506 B.R. 728 should control, even under *Newberry Square*, Debtor must be precluded from using the Rents. Under the *Newberry Square* decision, the Rents would constitute ECP's cash collateral pursuant to section 363 of the Bankruptcy Code.

33. Consequently, pursuant to section 363(c)(4) of the Bankruptcy Code, the Debtor must segregate and account for any cash collateral (including Rents, if the Court determines Rents to be cash collateral) in Debtor's possession, custody, or control. As discussed *supra*, ECP does not consent to Debtor's use of ECP's cash collateral. Unless the Court prohibits the Debtor's use of cash collateral and directs the Debtor to turn over all cash collateral, including all Rents if the Court determines Rents to constitute cash collateral, Debtor will continue using and dissipating ECP's cash collateral and ECP will suffer irreparable damage due to the loss of its collateral.

34. Accordingly, if the Court determines the Rents to belong to Debtor's estate, pursuant to section 363(c)(2) of the Bankruptcy Code, ECP requests that: (i) all cash collateral be sequestered, (ii) Debtor be required to segregate and account for all cash collateral that is now, has been, and may hereafter be, in Debtor's possession, custody and control, (iii) this Court prohibit the use cash collateral now or hereafter in Debtor's possession, custody, or control, and (iv) ECP be authorized to collect any uncollected Rents from tenants.

<u>**Notice**</u>

35. Notice of this Motion has been provided to: (i) counsel for the Debtor, (ii) the Office of the United States Trustee, (iii) and all parties who have requested notice in this case via the CM/ECF system. The Movants submit that such notice is adequate and sufficient under the circumstances.

<u>**Statement Pursuant To Local Rule 9014-1(g)**</u>

36.     I hereby certify that, pursuant to Local Rule 9014-1(g), I requested on February 13, 2015 that counsel for Debtor concur to the relief sought in this Motion, but no concurrence was forthcoming.

**WHEREFORE**, ECP Commercial II LLC requests that the Court enter an Order: (i) confirming that no automatic stay exists with respect to the Rents or, in the alternative, prohibiting the Debtor from collecting, utilizing or disbursing any Rents or cash collateral, and sequestering and providing an accounting of the same, and (ii) such other and further relief as is just.

Respectfully Submitted,

**JAFFE, RAITT, HEUER & WEISS, P.C.**

By: /s/ Judith Greenstone Miller
Judith Greenstone Miller (P29208)
Paul R. Hage (P70460)
Counsel for ECP Commercial II LLC
27777 Franklin Road, Suite 2500
Southfield, MI  48034-8214
Telephone: (248) 351-3000
Facsimile: (248) 351-3082
Email: jmiller@jaffelaw.com
E-mail: phage@jaffelaw.com

-and-

**LEITESS FRIEDBERG PC**

By: /s/ Jeremy S. Friedberg
Jeremy S. Friedberg
Counsel for ECP Commercial II LLC
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
Telephone: (410) 581-7400
Facsimile: (410) 581-7410
Email: jeremy.friedberg@lf-pc.com

Dated:  February 13, 2015